UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---------------------------------------------------------------------------------------------

**DOCKET NO: 11-56430**

---------------------------------------------------------------------------------------------

ROTHWELL, LTD,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

---------------------------------------------------------------------------------------------

**REPLY BRIEF OF APPELLANT ROTHWELL, LTD.**

---------------------------------------------------------------------------------------------

On Appeal from the Judgment of the United States District Court
for the Central District of California
D.C . NO. 10-cv-00479-RGK-FFM
(Honorable R. Gary Klausner)

---------------------------------------------------------------------------------------------

WILLIAM A. COHAN, ESQ.
WILLIAM A. COHAN, P.C.
P.O. Box 3448
Rancho Santa Fe. CA 92067
Tele: (858) 832-1632
FAX: (858) 832-1845
E-mail: bill@williamacohan.com

Attorney for Plaintiff-Appellant
ROTHWELL, LTD.

# <u>TABLE OF CONTENTS</u>

<u>PAGE:</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . .. . ..  vi

ARGUMENT . . . . . . . . . . . . . . . . . . . . . .. . . . .. . . . . . . . . . . . . .  1

I. UNDER FACTS AND CIRCUMSTANCES HERE CALIFORNIA
   LAW IS NOT IMPLICATED  . . . . . . . . . . . . . . . . . . .. . . .. . . . . .  1

A.  No California Citizen Or Entity Had Any Interest In This Matter .  1

B.  California Would Apply TCI Law Pursuant To Choice Of Law,
    International Comity And The 1985 Hague Trust Treaty . . . . . . .  3

II. THE TRIAL COURT AND THE GOVERNMENT IGNORED
    BINDING ADMITTED FACTS EQUALLY BINDING ON
    APPEAL  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

A.  The Unequivocal Admitted Facts Conclusively Establish That
    Rothwell Never Held Any Property Belonging To Francis Nor
    In Which He Held Any Property Rights . . . . . . . . . . . . .. . . . . . .  7

B.  Government Bound By Admissions Rothwell's Officers
    Controlled Rothwell And Its Assets . . . . . . . . . . . . . . . . . . . . .  11

C.  The Mexican Corporation's Property Investments Do <u>Not</u>
    Provide Evidence Francis Controlled Rothwell Nor Had Property
    Or Rights To Property in Rothwell's MSSB Account . . . . . . . . .  15

D.  Misplaced Reliance On The Trust's Protectors' Powers . . . . . . .  19

(i) The government invents "facts" to support its argument . . . . . . .  20

III. THE BINDING ADMISSIONS ARE FATAL TO THE
"NOMINEE" AND "NO WRONGFUL LEVY" FINDINGS . .    23

CONCLUSION   . . . . . . . . . . . . . . . . . . . . .. . . .. . . . . . . . . . . . . . .    26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . .. . . .. . . . .    27

**SUPPLEMENTAL EXCERPT OF  RECORD            PAGE:**

Volume 1. . . . . . . . . . . . . . . . . . . . . . .. . . .. . . . . . . . . . .  RL-SER 1-RL-SER 72

Joint Exhibit List . . . . . . . . . . . . . . . . . . . . .. . . .. . . . . . . . . .    RL-SER 1

United States Request for Judicial Notice . . . . . . . . . . . . .    RL-SER 30

TRIAL EXHIBITS:

275    Joseph Francis 2002 Individual Income Tax Return . .    RL-SER 48

276    Joseph Francis 2003 Individual Income Tax Return . .    RL-SER 57

INDICTMENT, District of Nevada:

*U.S. v. Joseph R. Francis,* Case no. 3:07-CR-0026-BES-RAM   RL-SER 66

# TABLE OF AUTHORITIES

## CASE AUTHORITY                                   PAGE:

*American Auto Assoc. v. AAA Legal Clinic of Jefferson Crooke, P.C.,*
    930 F.2d 1117 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*American Economy Ins. Co. v. Bogdahn,*
    2004 OK 9, 89 P.3d 1031 (2004) . . . . . . . . . . . . . . . . . . . . . . .  8

*American Title Ins. Co. v. Lacelaw Corp.,*
    861 F.2d 224 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Brady v. Brown,*
    51 F.3d 810 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*E.H. Boly & Son, Inc. v. Schneider,*
    525 F.2d 20 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

*Ensign v. Pennsylvania,*
    227 U.S. 592 (1913) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Erickson v. Commissioner,*
    598 F.2d 525 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Ex parte Rickey,*
    31 Nev. 82, 100 P. 134 (1909) . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Ex parte Smith,*
    33 Nev. 466, 111 P. 930 (1910) . . . . . . . . . . . . . . . . . . . . . . . . .  8

*International Controls Corp. v. Vesco,*
    593 F.2d 166 (2nd Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Heritage Bank v. Redcom Laboratories, Inc.,*
    250 F.3d 319 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Lee v. City of Los Angeles*,
 250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*LiButti v. United States,*
 107 F.3d 110 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*NAACP v. Claiborne Hardware Co.*,
 458 U.S. 886 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Nedloyd Lines B.V. v. Sup. Ct.,*
 3 Cal.4th 459, 11 Cal.Rptr.2d 330 (1992) . . . . . . . . . . . . . . . .  4

*Oxford Capital Corp. v. United States,*
 211 F.3d 280 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Page v. Walser,*
 46 Nev. 390, 213 P. 107 (1923) . . . . . . . . . . . . . . . . . . . . . . . .  8

*Shades Ridge Holding Co., Inc. v. United States,*
 888 F.2d 725 (11th Cir. 1989), *cert. denied,*
 494 U.S. 1027 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Shrestha v. Holder,*
 590 F.3d 1034 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Stockton v. Ortiz,*
 47 Cal.App.3d 183, 120 Cal.Rptr. 456 (1975) . . . . . . . . . . .  16

*Stern v. CIR,*
 747 F.2d 555 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Stud v. Trans Int. Airlines,*
 727 F.2d 880 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Tedoris v. United States,*
 211 F.3d 488 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*United States v. Bell,*
27 F.Supp.2d 1191 (E.D. CA 1998) . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Bennett,*
621 F.3d 1131 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*United States v. Davis,*
332 F.3d 1163 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. First Nat. Bank of Circle,*
62 F.2d 882 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wehlage v. Empress Healthcare, Inc.,*
__ F.Supp.2d __, 2011 WL 5172278 (N.D. CA 2011) . . . . . . 4

*Wong v. Tenneco, Inc.,*
39 Cal.3d 126, 216 Cal.Rptr. 412 (1985) . . . . . . . . . . . . . . . . 4, 16

## STATUTES AND RULES                                          PAGE:

26 U.S.C. §7701(a)(30)(E)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

California Probate Code §15304(b) . . . . . . . . . . . . . . . . . . . . . . . 5

Nevada Revised Statutes:
NRS 78A.120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Code of Federal Regulations:
CFR §301.7701-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CFR §301.7701-7(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CFR §301.7701-7(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## OTHER                                                       PAGE:

1985 Hague Trust Convention . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32, F.R.A.P., I hereby certify that this Reply Brief is proportionately spaced with Times New Roman, 14 point typeface prepared on the following word processing system: Corel WordPerfect Office 12.

Additionally, I certify that this Reply Brief contains no more than 7,000 words pursuant to Rule 32(a)(7)(B).

Pursuant to Rule 32(a)(7)(C), F.R.A.P., and Circuit Rule 32-1, I hereby certify that Appellant Rothwell, Ltd.'s Reply Brief contains 5,929 words.

DATED: May 4, 2012            By: <u>*s/ William A. Cohan*</u>
                                    WILLIAM A. COHAN, Esq.

                                    Attorney for Plaintiff-Appellant
                                    ROTHWELL, LTD.

**I.     UNDER FACTS AND CIRCUMSTANCES HERE CALIFORNIA LAW IS NOT IMPLICATED.**

**A.     No California Citizen Or Entity Had Any Interest In This Matter.**

The government admitted and introduced the evidence establishing that no California citizen or entity had any interest in this litigation, to wit: (1) Joseph Francis ("Francis"), settlor of The Francis Trust ("The Trust"), was a Nevada citizen, residing in Incline Village, Nevada; (2) Sands Media, Inc. ("Sands"), one of the sources of funds, is a Nevada corporation; and (3) Mantra Films, Inc. ("Mantra"), another source of funds, is an Oklahoma corporation.  See Rothwell's Supplemental Excerpts of Record ("RL-SER"): Joint Exhibit List at RL-SER 24-26; United States Request for Judicial Notice RL-SER 30-31; and Trial Exhibits: 265 and 266 (RL-SER 34-41, Mantra's 1998 Certificate of Incorporation); 270 and 273 (RL-SER 42-47, Sands' 2002 Certificate of Incorporation); and 275 and 276 (RL-SER 48-65, Francis' personal tax returns filed as a Nevada citizen). See also, admission Francis Indicted in District of Nevada on April 11, 2007 (Admitted Fact ("AF")[1] GGGGG (Clerk's Record ("CR") #54-1 at ER 40); [2] and

---

[1]  Parties are bound by stipulated facts in a pretrial order. *E.H. Boly & Son, Inc. v. Schneider,* 525 F.2d 20, 23 n. 5 (9th Cir. 1975).

[2]  All admitted facts ("AF") referred to herein are contained in the parties' Final Pretrial Conference Order (CR #54-1; ER 23), which the trial court refused to sign at the commencement of trial.

-1-

District of Nevada Indictment against Francis (RL-SER 66-72).[3]

The government also admitted: (1) Rothwell, Ltd, is a Cayman Island corporation ("AF," T, ER 27; Trial Ex. 104, ER 3012); (2) The Trust is a Turks & Caicos Islands ("TCI") trust whose place of administration and provisions are construed pursuant to TCI laws ("AF," A-E, ER 25-26; Trial Ex. 101, ER2983); (3) Hallmark, Ltd. ("Hallmark"), the Trustee, is a TCI corporation ("AF," O, ER 27); (4) Hallmark's owners and officers Colin Chaffe and Nicola Jordan are British citizens and residents of TCI ("AF," Q, ER 27) and Brian Trowbridge is a Canadian citizen and TCI attorney and resident ("AF," EE, ER 28). Additionally, trust protector Pittsford, Ltd. is a British Virgin Island corporation (ER 320; Trial EX 101, ER 3002) and the other trust protector, Brian J. Rayment, is an Oklahoma resident (ER 357).

In a nutshell, nothing implicates the laws of California except that Rothwell's MSSB account was located and seized by the government in California.

---

[3] A court may take judicial notice of matters of public record not subject to reasonable dispute. *Lee v. City of Los Angeles,* 250 F.3d 668, 689-90 (9th Cir. 2001).

**B.     California Would Apply TCI Law Pursuant To Choice Of Law, International Comity And The 1985 Hague Trust Treaty.**

California would apply TCI law because, in addition to the foregoing, (1) the government admits that the Trust has an unequivocal choice of law provision ("AF," E, ER 26; see also Trial Ex. 101, ER 2986); and (2) Rothwell's officers (who were also officers of the Trustee, Hallmark Trust, Ltd.) controlled, directed and managed the operations, finances, assets and investment decisions of Rothwell ("AF," R-BB, EE-HH; ER 27-28). TCI law also applies because the Internal Revenue Code and Regulations classify the Trust as a foreign trust based on the "court test" and "control test" requirements. See 26 U.S.C. §7701(a)(30)(E)(i) and (ii); and CFR §301.7701-7, *et seq.* Pursuant to CFR §301.7701-7(a)(1), a trust is a United States person if:

> (i) A court within the United States is able to exercise primary supervision over the administration of the trust (court test); **and** (ii) One or more United States persons have authority to control all substantial decisions of the trust (control test). [Emphasis added]

See also, § 301.7701-7(b):

> Applicable law. The terms of the trust instrument and applicable law must be applied to determine whether the court test and the control test are met.

Here, (1) the Trust is a TCI trust administered in and under the laws of the Turks & Caicos Islands; (2) the Trustee, a TCI corporation, has sole discretion to

control all substantial decisions of the trust; and (3) the Trust Protectors, who have

authority to approve or disapprove some decisions of the Trustee, are British

Virgin Islands and Oklahoma residents.

Under California law, there is a strong policy favoring enforcement of

choice-of-law provisions. *Nedloyd Lines B.V. v. Sup. Ct.,* 3 Cal.4th 459, 464-65,

11 Cal.Rptr.2d 330, 330-34 (1992); *Stud v. Trans Int. Airlines,* 727 F.2d 880, 881-

82 (9th Cir. 1984); *Wehlage v. Empress Healthcare Inc*., __ F.Supp.2d __, 2011

WL 5172278 (N.D. CA 2011).  Furthermore, pursuant to the doctrine of

International Comity and California public policy, California courts defer to

foreign law and apply the substantive law of the foreign sovereign state. *Wong v.*

*Tenneco, Inc.,* 39 Cal.3d 126, 134, 216 Cal.Rptr. 412, 417-18 (1985)(applying law

of Mexico).   As the California Supreme Court stated in *Wong, supra,* at 39 Cal.3d

at 137 n. 12:

> ... Where, as here, only one state "'has a legitimate interest in the application
> of its law and policy and the other has none, there is no real problem; clearly
> the law of the interested state should be applied.'" (*Hurtado [v. Sup. Ct.],*11
> Cal.3d [574 (1974)], at 580 [], quoting from Currie, Selected Essays on
> Conflicts of Laws (1963) p. 189).

The 1985 Hague Trust Convention was drafted at the request and with the

enthusiastic participation of the United States and the United Kingdom ("Great

Britain").  Although the United States signed the Treaty on June 17, 1989, the

Senate has not ratified the treaty.  Nevertheless, pursuant to the Doctrine of International Comity California would likely honor the Treaty – which went into force in 1992 -- because in addition to the United States signing in 1989: (1) Great Britain signed the treaty on October 1, 1986; (2) ratified the treaty on November 17, 1989; (3) extended the ratification to all its territories, including TCI and the Cayman Islands on January 1, 1992; and (4) the Trust is a TCI trust to which the Treaty applies. *See e.g., International Controls Corp. v Vesco,* 593 F.2d 166, 178-79 n.14 (2nd Cir. 1979) (observing that the United Kingdom extended International Convention on Service of Process to its territories which include the Cayman Islands and TCI).

California law concerning "self-settled" trusts does not apply instanter because: (1) the only personal asset Francis settled on the Trust, was his shares of Island Films, Ltd. -- a TCI corporation ("AF," UUU; ER 33); and (2) Rothwell never received any assets owned by Francis, as explained more fully in Section II.A, *infra.*  Consequently, there is no contribution from Francis which any creditor could reach under Cal.Prob. Code §15304(b).

## II.    THE TRIAL COURT AND THE GOVERNMENT IGNORED BINDING ADMITTED FACTS EQUALLY BINDING ON APPEAL.

It is well settled that any deliberate, clear and unequivocal admission,

whether written or oral, made in the course of judicial proceedings qualifies as a judicial admission. *Ensign v. Pennsylvania,* 227 U.S. 592 (1913); *Heritage Bank v. Redcom Laboratories, Inc.,* 250 F.3d 319, 329 (5th Cir. 2001). Under the doctrine of judicial admissions, stipulations and admissions have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact, and are not only binding on the parties and the trial court, but on appeal as well. *U.S. v. Davis,* 332 F.3d 1163, 1168 (9th Cir. 2003); *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988).

> An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the court simply because it finds the evidence presented by the party against whom the admission operates more credible. This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim.

*Am. Auto. Assoc. v. AAA Legal Clinic Of Jefferson Crooke, P.C.,* 930 F.2d 1117, 1120 (5th Cir. 1991). Furthermore, "a party need offer no proof at trial as to matters agreed to in the pre-trial order, nor may a party offer evidence or advance theories at the trial which are not included in the order or which contradict its terms." *U.S. v. First Nat. Bank of Circle,* 652 F.2d 882, 886 (9th Cir. 1981).

The trial court – as does the government on appeal – ignored the admitted facts, as well as the undisputed testimony, to reach conclusions wholly

unsupported and conclusively refuted by the record.

> The court's obligation to question assertions of fact does not extend permission for judges to substitute their own beliefs – derived from their own notions about what is and is not likely to be true – about the truth of the sort of ordinary factual matters that are eminently determinable by the usual factfinding processes of the court, but that the moving party (and especially the government, which has ample resources to litigate those matters) declines to challenge.

*Amnesty International USA v. Clapper,* 667 F.3d 163, 165 (2nd Cir. 2011).

### A.   The Unequivocal Admitted Facts Conclusively Establish That Rothwell Never Held Any Property Belonging To Francis Nor In Which He Held Any Property Rights.

The government <u>admitted</u> that: (1) beginning in 2001, Rothwell entered into various distribution and licensing contracts with West Direct ("AF," Z, ER 28); (2) during 2002 Sands Media, Inc. wired $1,950,000.00 to Rothwell's Bermuda bank account ("AF," CC, ER 28); (3) during 2003 Sands Media, Inc. wired $8,461,020.00 to Rothwell's Bermuda bank account ("AF," DD, ER 28); and (4) from February 28th through August 4, 2003, Rothwell received $4,489,050.00 in funds from Schedule Company (a TCI corporation), of which the original source was Sands Media and Mantra Films, Inc. ("AF," JJJJ - UUUU, ER 35-37). The government also admitted the evidence establishing the aforesaid admissions at trial on June 15, 2011, through its witness IRS Revenue Agent Beas. ER 104-106, 151-210; Trial Exs. 201-244; see also RL-SER 9-19.

The government further admitted that Sands and Mantra are engaged in the lawful business of producing, promoting, marketing and distributing DVDs, infomercials, magazines, apparel and other items -- which undisputably generated millions of dollars in income annually. ("AF," KKK, ER 32).  The government requested that the district court take judicial notice that Mantra Films was incorporated in Oklahoma on November 25, 1999, (CR #59; RL-SER 30-31; see also Trial Ex. 265, 266, RL-SER 34-41).

> Oklahoma law treats a corporation as a legal entity separate and distinct from its shareholders. 18 O.S. 2001 §1016; 16 O.S. 2001 §1; *Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, ¶10, 894 P.2d 1077, 1080; *Sautbine v. Keller,* 1966 OK 209, ¶15, 423 P.2d 447, 451 (a family corporation is a legal entity separate and distinct from its shareholders).

*American Economy Ins. Co. v. Bogdahn,* 2004 OK 9, ¶9 n. 20, 89 P.3d 1031, 1061 n. 20 (2004).  Likewise, the government requested judicial notice that Sands Media was incorporated in Nevada on January 16, 2001 (CR #59, RL-SER 30-31; see also Trial Ex. 270, 273; RL-SER 42-47) -- which Nevada law treats as a legal entity separate and distinct from its shareholders.  *NRS 78A.120*; *Page v. Walser,* 46 Nev. 390, 213 P. 107, 112 (1923); *Ex parte Smith,* 33 Nev. 466, 111 P. 930, 934 (1910); *Ex parte Rickey,* 31 Nev. 82, 100 P. 134, 140 (1909).

In rendering its decision, the trial court ignored all those binding admissions and additional evidence presented at trial through witnesses Owen Foley, Colin

-8-

Chaffe and Brian Rayment which unequivocally established that Francis had no

property or rights to property in Rothwell's MSSB account.  The government does

likewise on appeal.  The government is estopped by its admissions and evidence to

claim that Rothwell's MSSB account was held as nominee for Francis.  The

foregoing recalls:

> The government contends that, as a matter of law, a parent corporation
> "owns" the assets of its wholly-owned subsidiary, and therefore that Bennett
> fraudulently obtained assets "owned by" BOA ... when he obtained
> mortgages from Equicredit....
>
> More than a century of corporate law says otherwise. *See, e.g., Wells v.
> Dane,* 101 Me. 67, 63 A. 324, 325 (1905) ("The plaintiff was not the
> corporation, notwithstanding he owned and controlled a majority of its
> stock.  He did not own or control its property ...."); *Huber v. Martin,* 127
> Wis. 412, 105 N.W. 1031, 1037 (1906) ("Where is the ownership of the net
> assets of a mutual insurance company located?  That the legal title is in the
> corporation goes without saying.").  As early as 1926, the Supreme Court
> recognized that "[t]he owner of the shares of stock in a company is not the
> owner of the corporation's property." *R.I. Hosp. Trust Co. v. Doughton,* 270
> U.S. 69, 81 [] (1926).  *While the shareholder has a right to share in
> corporate dividends, "he does not own the corporate property." Id.*  This
> principle was followed by the states as corporate law developed. * * *
>
> ... As the Supreme Court explained in more recent years:
>
>> A basic tenet of American corporate law is that the corporation and its
>> shareholders are distinct entities.  An individual shareholder, by
>> virtue of his ownership of shares, does not own the corporation's
>> assets ...  A corporate parent which owns the shares of a subsidiary
>> does not, for that reason alone, own or have legal title to the assets of
>> the subsidiary.

> *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474-75 [] (2003) ... 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations §31 (2006) ("The property of the corporation is its property and not that of the shareholders as owners.... That is to say, the capital or assets of the corporation are its property, and the shares evidenced by the stock certificates are the property of the shareholders, which do not carry the capital property or any profits until they have been declared and vested as dividends.... A holding corporation does not own the subsidiary's property."); 18A AmJur.2d Corporations §632 ("Even complete ownership of all outstanding stock of a corporation is not the equivalent of ownership of a subsidiary's property or assets, because a parent and subsidiary comprise two wholly separate entities with individual property rights, no transfer of title to corporate property taking place."); 15 Cal. Jur.3d Corporations §335 ("The shareholders are not the owners of corporate property.")

*U.S. v. Bennett,* 621 F.3d 1131, 1136-37 (9th Cir. 2010)(emphasis added); *see also, Tedoris v. U.S.*, 211 F.3d 488, 493 (9th Cir. 2000) ("Enterplast, however, is a separate legal entity whose business is not the business of its shareholders (see, e.g., *Erickson v. Commissioner,* 598 F.2d 525, 528, 530 (9th Cir. 1979)).... As shareholders, Tedoris cannot label Enterplast's business as "our business" any more than any shareholder in any closely held (or publicly held) corporation can do so.").

TCI law is no different. TCI Attorney Foley, an expert on TCI law ("AF," A-B; ER 25), testified: the funds transferred to Rothwell are its assets – not the Trust's assets; i.e. Rothwell is a separate legal entity whose assets are sole and separate and do not belong to the Trust. (ER 3840 - 3843). The trial court, like the

government, confuses and conflates the Trust with the Rothwell, Ltd. corporation -
- as they have done with Francis and the Sands and Mantra corporations –
ignoring their separate and distinct legal existence(s).   *Axiomatically,* Rothwell's
officers did <u>not</u> need the Trust's protector's agreement to provide funding to Casa
Blanca, a Mexican corporation, to purchase Mexican property.  As TCI Attorney
Foley testified at 3942:18-23:

> A.  The trust assets are the shares. ... [T]hese circumstances ... you
> described, the trust assets are the shares of Rothwell.  Rothwell owns the
> money itself, because it has been fully capitalized. *What they choose to do
> with the money is a matter of Rothwell.* [Emphasis added].

## B.    Government Bound By Admissions Rothwell's Officers Controlled Rothwell And Its Assets.

The government unequivocally admitted that at all times Rothwell's officers
"controlled, directed and managed the operations, finances, assets and investment
decisions of Rothwell, Ltd." ("AF," R-BBB, EE-HH; ER 27-28).   The
government also admitted: (1) MSSB broker Welker <u>never</u> discussed Rothwell's
account with Francis ("AF," II-KK; ER 29); (2) Francis did not have signatory
authority on Rothwell's MSSB account ("AF," LL, ER 29); (3) MSSB broker
Stewart, who replaced Welker in 2008, never had any discussions with Francis
concerning Rothwell's MSSB account prior to the nominee levy on November 6,
2009 ("AF," DDD-EEE, ER 31); and (4) Francis had his own MSSB accounts

which Stewart managed ("AF," CCC, ER 31).

Welker's and Stewart's testimony was undisputed. Welker testified he had no discretion with respect to investments made by Rothwell (ER 4156:21-4157:3). Welker also testified at length about Rothwell's officers' directing the investment decisions in the MSSB account. See Trial EX 158-B, ER 4125-4192 (Vol.15); *see also,* Trial Ex 113 (Welker's Notes); ER 3174. Welker further testified in pertinent part under cross-examination by the government:

MR. THOMAS: ... How many times did you meet with [Joe Francis] ...? ***

A: Typically we would maybe meet once a year.

Q: Okay. To go over investments that he had?

A: Uh-huh, yes.

**Q:  Did it include going over the Rothwell materials?**

**A:  No. [*Id.,* ER 4252:3-12 (emphasis added)]  * * ***

Q: ... So, yes, I'm speaking of when you first discussed with Mr. Rayment this Rothwell entity.

A: At some point in time prior to when the account was opened, Brian [Rayment] referred me to them.

Q: Brian referred you to Mr. Chaffe?

A: Yes, I believe that's who it was at the time.

Q: **And did Mr. Rayment have anything else to do with that account**

-12-

**after that?**

**A: No.**

**Q: Okay.  Did you ever discuss the Rothwell account with Mr. Francis?**

**A: No.** [*Id., ER 4253:5-16 (emphasis added)*].

Welker also testified that he had no knowledge that Francis had any connection to Rothwell or its account (*Id. ER 4272:21-23, 4273:17-22)*.   Brian Trowbridge, who became the owner of the Trustee, Hallmark, and officer of Rothwell after November 29, 2005, testified about his control over Rothwell's account:

> TROWBRIDGE: ... Generally speaking what happened is Mr. Welker would call me and say certain investment had matured.  And there was "X" number of dollars in the account, what did you want to do with it?  And, uh, on some occasions he offered some suggestions.  On other occasions, I would say, you know, what can we roll this over, because that's done well for us or whatever.  So between the two of us, we'd make some sort of a decision with respect to what to do with the funds.
>
> Q: Did you consult with Joe Francis?
>
> A: Absolutely not.
>
> Q: Did you consult with anyone else, other than Mr. Welker in making these decisions?
>
> A: No.
>
> Q: Did you talk with Mr. Rayment about the decisions?

A. No. [*Id. ER 3994:22-3995:14*].

Obviously the government made the admission that Rothwell's officers controlled Rothwell in the Proposed Pre-Trial Order ("AF," R; ER 27) following conclusion of discovery because the evidence conclusively established that Rothwell's officers controlled Rothwell and its assets -- not Francis, either directly or indirectly.

With respect to the over $20,000,000 MSSB investment account – *the asset actually seized* – the government (as did the trial court) ignores all the investments made by Rothwell's officers in Rothwell's MSSB account and, instead, focuses its arguments on the Mexican property.  However, the Mexican property is Casa Blanca's asset -- not Rothwell's.

Of more than one hundred investment expenditures from Rothwell's MSSB account, most involving between $200,000 and $1,400,000, only one was made for anything other than securities acquisitions.  This expenditure totaling $1,023,000, occurred in September, 2005 (Trial Ex. 264, ER 4627, 4650), which funded Casa Blanca's purchase of vacant Lot #13B in Mexico. "AF" OOO-YYY; ER 32-34; Trial Ex. 264, ER 4489-4816.   On March 13, 2002, Rothwell provided $1,030,000 from its Bermuda account to enable Casa Blanca to purchase vacant Lot #14. ("AF," OOO, WWW, XXX, YYY; ER 32-34).   This was done to

-14-

increase the value of The Trust's assets (which assets are the shares in Rothwell, Island Films and Summerland Holdings, the latter two of which together own all of Casa Blanca's shares), because Mantra Films and Sands Media were going to – and ultimately did – provide the funds to develop and construct improvements costing more than $5 million on Lot #14, thereby enhancing the value of Casa Blanca's shares and assets. ("AF," PPP, TTT; ER 290:9-292:20; Trial Ex. 134-141; ER 307:4-16; 3295-3549).

### C.   The Mexican Corporation's Property Investments Do <u>Not</u> Provide Evidence Francis Controlled Rothwell Nor Had Property Or Rights To Property In Rothwell's MSSB Account.

In addition to the admissions set forth in Subsection B, with respect to the Mexico investments, the government admitted: (1) Chaffe -- on behalf of Trustee Hallmark -- made the decision to purchase the Mexico property and set up a Mexican corporation ("AF," PPP, TTT; ER 32-33); (2) Rayment brought the investment opportunity to Chaffe; ("AF," QQQ, ER 33); (3) Trustee Hallmark retained Attorney Rayment to arrange for the establishment of the Mexican Corporation and its purchase of Lots ##13B and 14 ("AF," TTT, ER 33); (4) Casa Blanca de Punta Mita ("Casa Blanca"), the Mexican Corporation, owns the

-15-

Mexican property ("AF," VVV, WWW; ER 33);[4] and (5) Rothwell provided the

funds for Casa Blanca's purchases of the property ("AF," OOO, ER 32).   The

government is bound by these admissions.

Furthermore, expert witness David Connell testified that under Mexican

law: (1) Casa Blanca is a legal Mexican limited liability corporation (ER 73:14-

74:5); (2) Casa Blanca is completely independent and distinct from its

shareholders (ER 74:6-15); (3) Casa Blanca purchased Lots ##14 and13B (ER

74:24-76:3; 76:24-81:20; 83:13-84:8); (4) Rothwell, Ltd. has no property interests

in Lots ##14 or 13B or legal interest in Casa Blanca (ER 84:10-19); (5) the Trust

has no legal interest in Casa Blanca nor property interest in Lots ## 14 or 13B (ER

84:20-85:2; 86:15-20); (6) TCI corporations Islands Films and Summerland

Holdings each own  50% of Casa Blanca's shares (ER 85:6-13); (7) Casa Blanca's

shareholders do not own any interest in its assets, including Lots ## 13B and 14

---

[4] Under Mexico's Constitution and laws only Mexican citizens, companies and corporations can own Mexican real estate -- as non-Mexican citizen and entities Francis, The Trust, and Rothwell are barred by Mexican law from acquiring ownership of Mexican real estate or holding title thereto. *See, e.g., Wong v. Tenneco, Inc.,* 39 Cal.3d 126, 129-32 and n. 2 (1985); *Brady v. Brown,* 51 F.3d 810, 816-17 (9th Cir. 1995); *Stockton v. Ortiz,* 47 Cal.App.3d 183, 120 Cal.Rptr. 456 (1975).  Casa Blanca purchased the property from the Mexican corporate owner – not government witness Mohammed Hadid, who as a non-Mexican citizen had no ownership rights to sell; Francis' U.S. corporations paid Hadid for his purported "option to purchase Lot 14," i.e. "finder's fee." See Gov't BR at p. 11.

(ER 85:17-86:4); (8) Joseph Francis does not have any legal or beneficial interest in Casa Blanca nor its assets (ER 86:5-14); and (9) U.S. corporations Sands Media and Mantra Films have no legal or beneficial interest in Casa Blanca nor its assets (ER 86:22-87:9).

Mr. Connell also testified that under Mexican law the funds provided by Sands and Mantra to improve Lot #14 constituted a gift to Casa Blanca, and such a gift does not give them a legal interest in Casa Blanca's property (ER 87:10-25). *Ipso facto* under Mexican law, the funds provided by Rothwell to Casa Blanca to purchase the Mexican property constituted a gift to Casa Blanca and did not give Rothwell a legal interest in Casa Blanca's property. Connell's testimony was undisputed and unchallenged: following direct, the government stated, "We have no questions for this witness." *Id.,* ER 88:6-8. The court's Order reflects that both the binding admissions and Connell's testimony were ignored. (See CR #77; ER 3-15)

Contrary to the title attributed by the government to its arguments in subsection 5. at p. 13, Rothwell did not purchase Mexican property. Instead, as the government admitted Casa Blanca -- not Rothwell -- purchased the Mexican property. ("AF," VVV, WWW; ER 33). In its Brief at p. 13, the government makes much of Attorney Rayment's powers of attorney to act on behalf of Island

-17-

Films and Summerland Holdings, as well as their subsidiary Casa Blanca, to provide legal assistance in establishing Casa Blanca as a Mexican corporation and its property purchases (Trial Ex.  135 –136; ER 3364-3374).

The fact that Rayment had power of attorney to act on behalf of Island Films, Summerland Holdings and Casa Blanca with respect to the Mexico transactions does not, however, establish that he had control over Rothwell -- because Rayment was <u>never</u> given power of attorney to act on behalf of Rothwell nor Rothwell's MSSB securities account seized by the government.    In a nutshell, the events culminating in Casa Blanca's acquisition of the property in Mexico do not reflect a pattern of control of Rothwell or its assets nor a pattern of control over the Trust. *Stern v. CIR,* 747 F.2d 555, 559 (9th Cir. 1984).

Likewise, the government's and trial court's distortions of  Rayment's fiduciary duties to Francis purportedly create a non-existent conflict with Rayment's fiduciary duties to the Trust, Island Films, Summerland Holdings and Casa Blanca when he was retained to  provide legal services on behalf of those entities in connection with incorporating Casa Blanca and its acquisition of property.  There is nothing improper in owing fiduciary duties to multiple persons and entities so long as no conflict exists; there is no evidence of any conflict of interest between and amongst Francis and the entities for which Rayment provided

-18-

legal services.  In fact and law Rayment's fiduciary duties to Francis precluded Rayment from controlling and/or assisting Francis from controlling the Trust or any of the entities whose shares are owned directly or indirectly by the Trust.

A conflict did arise more than a year after the government seized Rothwell's MSSB account in November, 2009: beginning in February, 2011, Francis attempted to assert control over the Trust which was rebuffed by both Rayment and the Trustee, resulting in Rayment's recusal from continuing representation of Francis. Trial EX 143, ER 3553-3710; Trial EX 167, 168, ER 4304-4313; ER 392:16-293:1, 294:11-295:1, 306:3-24; ER 379:5-401:20; 121:16-132.21.

### D.    Misplaced Reliance On The Trust's Protectors' Powers.

The government admitted: (1) pursuant to the provisions of the Francis Trust all power and discretion, including decisions concerning investments and/or disbursements, is determined at the sole discretion of the Trustee, with the exception of specified powers noted within the Schedules of the Trust which need the permission of the protector ("AF," F, ER 26); (2) pursuant to the terms of the Francis Trust, the trustee needs both protectors' permission to make any distribution to a beneficiary ("AF," J, ER 26); and (3) pursuant to the terms of The Francis Trust, any disposition of Trust funds is subject to approval of The Francis Trust protector if the disposition exceeds $10,000 ("AF," K, ER 26).

-19-

There is simply no evidence that any disposition, including disbursements to any beneficiary, of Trust assets occurred which required Protector authorization. See Francis Trust, Trial Ex. 101; ER 2983.  Thus, the Trust's Protectors' powers are irrelevant.

Contrary to the admissions and evidence, the trial court and the government assume that Trust Protector powers are implicated by Rothwell's gift to Casa Blanca to fund real property purchases.  But Rothwell is a legal Cayman Island corporation separate and distinct from its shareholder Inceptre Holdings, Ltd. (a TCI corporation which holds the shares in trust for the Francis Trust ("AF,"T, V,W, X; ER 27-38)).

As with United States corporate law, under TCI law Rothwell's  assets do not belong to the Trust.  ("AF," T; ER 27; see also Corporate Articles, Trial Ex. 104; ER 3012-3090).  Pursuant to Rothwell's articles of incorporation Rothwell's officers have sole discretion over investment decisions and disposition of  assets – their powers are not limited by the Trust's protectors' powers. See, e.g. Articles of Association, ¶81 (ER 3026) and Memorandum of Association, ¶¶8, 13, 15, 30, 31, 32 and 37 (ER 3039-3040, 3043-3044).

**(i) The government invents "facts" to support its argument.**

The government asseverates:

According to the documents prepared by Foley the company set up to be Francis Trust's protector, Pittsford Ltd., was 100% owned by Chaffe, the owner of Hallmark Trust, the trustee (ER 406). Chaffe, however, was unaware that he owned Pittsford. (ER 317). *[Id., p. 8]*.

This is false, Chaffe (1) did <u>not</u> own, nor (2) did he know who owned Pittsford

Ltd., nor (3) did any document prepared by Foley indicate otherwise; the

government's citations to the record confirm these facts.

Next, the government asserts:

Francis's attorney, Brian Rayment, acted as the de facto protector of the Francis Trust, and Chaffe sent him reports on the activities of the trust in 2002, 2003 and 2004. (ER 322). By January 28, 2005, Rayment was signing formal documents in which he represented that he was the protector of the Francis Trust (ER 3004). [ *Id., p. 8]*.

As the government admits Rayment was retained to provide legal services to the

Trustee ("AF," TTT. ER 33; see also, ER 280:4-20). Again, Brian Rayment was

not the Trust's de facto protector; Trowbridge appointed Rayment as an additional

protector in January, 2005. ("AF," I-K, ER 26; ER 318). The evidence shows that

Rayment exercised his protector status twice: (1) when he endorsed the mandator

designation on January 28, 2005 (Trial Ex. 101 at ER 3004; ER 277:22-278:22,

324:7-325:13, 327:9-331:22); and (2) beginning in February, 2011, when he

refused Francis' demands to replace the Trustee and rejected Francis' ensuing

vicious attempts to wrest control from the Trustee (Trial Ex. 143, ER 3553-3710;

-21-

Trial Ex. 167, 168, ER 4304-4313; ER 292:16-293:1, 294:11-295:1, 306:3-24; ER 379:5-401:20; 121:16-132:21).

In any event, Rayment's status as Trust protector is irrelevant to Rothwell -- including its assets, management and control -- because Rayment held no ownership interest in nor was he ever an officer or director of Rothwell; likewise, Rayment held no ownership interest in nor any control of Hallmark, Ltd., the Trustee, or Inceptre Holdings, Ltd. The government also ignores its admission that Hallmark, Ltd., is a legal TCI corporation independent of and separate and distinct from Francis, Rayment, the Trust, Rothwell, Islands Films, Summerland Holdings and Casa Blanca ("AF," O, Q, EE; ER 27,28). In a nutshell, neither Francis nor Rayment had the legal or actual power to control either Trustee Hallmark, Rothwell or Inceptre Holdings.

The government baldly contends that the Mexican property is "purportedly an 'income-producing' property for the Francis Trust" (*id., at 49),* but this false claim is not supported by any facts or citation to the record. The record establishes that the property is and was always intended as a capital gain investment, not "income producing property." See e.g., ER 347:18-348:2.

The government argues:

Because it is unlikely that Francis would give away tens of millions of

dollars *in these circumstances* without any guarantee of receiving (or having a right to receive) anything in return, this factor suggests that the Rothwell transactions were not *bona fide.* [*Id.,* at 44-46 (emphasis supplied)].

This partially contradicts the government's admission that all the funds transferred in 2002 and 2003 were Sands Media's and Mantra Films' corporate assets.  Hence, Francis personally did not "give away" tens of millions of dollars, though he transferred the assets out of his control, retaining no more than a mere expectancy he would ever benefit as a result of the transfers.   But, the government provides the explanation -- *viz.* "in these circumstances" -- for Francis' strategy in divesting himself of control over these assets:

  Francis's business is one in which he [and the corporations] [are] frequently exposed to both civil and criminal liability." [*Id.,* at 46].

Placing some of Sands Media's and Mantra Films' assets beyond his own and his corporations' reach was the only way to defeat potential creditors and create a situation whereby Francis and/or his co-contingent beneficiaries of the Trust might someday benefit in the future after those creditors' claims were no longer viable. Mr. Francis is a gambler and a risk taker; this Trust demonstrates that Mr. Francis sometimes hedges his bets.

## III.   THE BINDING ADMISSIONS ARE FATAL TO THE "NOMINEE" AND "NO WRONGFUL LEVY" FINDINGS.

Under general principles of American corporate law, including Nevada and

Oklahoma corporate law, Francis had no property interest or rights to property transferred by the Sands and Mantra corporations.  Under TCI law Francis has no property interest or right to property in Rothwell, Ltd. or its assets.  Likewise, under Mexican law Francis has no property interest in Casa Blanca and his only right to Casa Blanca's property is a month-to-month tenancy in exchange for Sands Media and Mantra Films providing over $5,000,000 to fund the development of Lot #14 and paying all the costs of maintenance and up-keep.

Nominee status is determined by the degree to which a delinquent taxpayer exercises control over an entity and its assets. *Oxford Capital Corp. v. U.S.,* 211 F.3d 280, 284 (5th Cir. 2000); *LiButti v. U.S.,* 107 F.3d 110, 119 (2nd Cir. 1997); *Shades Ridge Holding Co., Inc. v. U.S.,* 888 F.2d 725, 729 (11th Cir. 1989), *cert. denied,* 494 U.S. 1027 (1990); *U.S. v. Bell,* 27 F.Supp.2d 1191, 1195 (E.D. CA 1998).

The district court held that Francis exercised control over Rothwell and its assets. (ER 13:26-27).  This finding cannot withstand the weight of the government's binding admissions that Rothwell's officers controlled, directed and managed the operations, finances, assets and investment decisions of Rothwell. ("AF" R-BB, FF-HH; ER 27-28).  This pivotal admission  renders the purported foundation for the lower court's finding that Chaffe and Rayment's testimony that

-24-

Francis lacked control over Rothwell "unconvincing," as nothing more than "insubstantial findings of fact screening reality." *NAACP v. Claiborn Hardware Co.,* 458 U.S. 886. 924 (1982). Conspicuously, the lower court did <u>not</u> find "unconvincing" the testimony of MSSB Brokers John Welker and Brian Stewart, nor of attorneys Brian Trowbridge, Owen Foley and David Connell, which finding is equally essential to justify finding Chaffe's and Rayment's testimony "unconvincing."

> ... the totality of the circumstances approach ... imposes the requirement that an IJ not cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result.

*Shrestha v. Holder,* 590 F.3d 1034, 1040 (9th Cir. 2010).

The "unconvincing," "nominee" and "no wrongful levy" findings are mutually exclusive of all the binding admissions and evidence establishing that Rothwell's officers controlled Rothwell and its assets – not Francis or Rayment.

Last, but certainly not least, the district court's findings disintegrate in the light of the binding admission that Francis borrowed $5,000,000.00 from Washington Mutual Bank on March 3, 2008. ("AF," LLL, ER 32) Obviously, if Francis controlled Rothwell either directly or indirectly he could have directed the $5 million dollars be loaned to him from Rothwell's MSSB account -- which could have been done without control as a legitimate investment -- rather than

-25-

incur a substantial personal liability to Washington Mutual Bank for the principal and interest, several times larger than the $2 million dollar expenditures whereby the value of Island Films' and Summerland Holdings' assets (shares of Casa Blanca) increased through construction of $5 million worth of improvements to Casa Blanca's property.

## CONCLUSION

Based on all the foregoing,  admitted facts, evidence presented at trial and applying the law to the facts Rothwell respectfully submits that this Court should reverse the district court's judgment and direct entry of judgment for Rothwell, and the return of the funds seized from Rothwell's MSSB account, plus interest provided by law.

RESPECTFULLY SUBMITTED this 4th  day of May, 2012.

WILLIAM A. COHAN, P.C.

By: _s/ William A. Cohan_
     WILLIAM A. COHAN

Attorney for Plaintiff-Appellant
ROTHWELL, LTD.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 4, 2012.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I further certify that on May 4, 2012, I did cause four (4) copies of PLAINTIFF-APPELLANT ROTHWELL, LTD.'S SUPPLEMENTAL EXCERPT OF RECORD be shipped *via* Federal Express Two-Day to the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit and one (1) copy of the Supplemental Excerpt of Record be mailed *via* United States mail with sufficient first-class postage affixed thereto, to counsel for Appellee United States of America as follows:

Ivan Clay Dale, Esq.
U.S. Department of Justice - Tax Division
P.O. Box 502
Washington, D.C.  20044

DATED: May 4, 2012                    WILLIAM A. COHAN, P.C.

By: s/ *William A. Cohan*
     WILLIAM A. COHAN
Attorney for Plaintiff-Appellant
ROTHWELL, LTD.

-27-